# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRIAN ANDREKOVICH, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 17-1041 |
| ) | |
| BOROUGH OF PUNXSUTAWNEY, ) | Magistrate Judge Robert C. Mitchell |
| RICHARD ALEXANDER *in his* ) | |
| *individual capacity*, and FRANK ) | |
| WITTENBURG *in his individual capacity* ) | |
| Defendants. ) | |

## **OPINION**

Presently pending before the Court is a First Motion to Dismiss the Amended Complaint (ECF No. 25), with brief in support (ECF No. 26), filed by the Borough of Punxsutawney, Richard Alexander (Alexander), and Frank Wittenburg (Wittenburg), collectively, "Defendants". For the reasons that follow, the Court will deny Defendants' motion.

**Facts**

Plaintiff Brian Andrekovich alleges the following facts in his amended complaint. Plaintiff is a 25-year veteran of the Punxsutawney Police Department. Plaintiff is one of eight Punxsutawney police officers and, at all times relevant to this action, Plaintiff has served as the Department's sole detective, tasked with investigating all crimes against children. All of the officers in the Department, including Plaintiff, are members of a collective bargaining unit which had negotiated a collective bargaining agreement (CBA) with the Borough. At all times relevant to this action, Defendant Wittenburg served as the Department's union steward.

From early 2013 to March of 2015, when the Department was without a chief, Plaintiff acted as Officer in Charge (OIC). During his tenure as OIC, Borough Council did not receive any complaint regarding Plaintiff's performance of his duties. Plaintiff received a commendation for

1

his service from Defendant Alexander, the Mayor of Punxsutawney. Plaintiff's term as OIC ended in March of 2015 when James Borza was hired as Chief of Police.

On or about December 4, 2015, Wittenburg drafted a statement of charges against Plaintiff alleging, *inter alia*, that Plaintiff had assaulted fellow officers, displayed pornography to Alexander, was a danger to the general public, and required psychological evaluation and treatment. Wittenburg persuaded five other officers to sign the statement and, on or about December 21, 2015, he submitted the statement to Chief Borza who, in turn, passed it along to Borough Council. Thereafter, in January of 2016, Borough Council retained an attorney to investigate the charges against Plaintiff.

On February 4, 2016,[1] at a meeting with Alexander and a member of the Borough grievance committee, Plaintiff was informed generally of the nature of the charges, although, to date, he has not been provided with a copy of Wittenburg's written statement, nor has he been provided with any specific information about the allegations contained therein. The Borough's internal investigation ultimately concluded that the charges were baseless.

Notwithstanding the pending investigation or its conclusion, Wittenburg and the officers who had signed the statement (who had begun calling themselves the "Gang of Six") continued to represent to Alexander, Borough Council, and the public that Plaintiff was in need of mental health treatment, derelict in his duties as an officer, and a danger to the public. Plaintiff complained to Alexander about these statements, but no disciplinary action was taken against Wittenburg or other members of the Gang.

---

[1] Plaintiff's amended complaint mistakenly states that this meeting occurred on February 4, 2015. (ECF No. 21 ¶ 19).

On April 6, 2016, Plaintiff was informed that Alexander wished to see him at 9:00 a.m. the following morning. At the April 7, 2016 meeting, Alexander ordered Plaintiff to undergo a fitness for duty examination by Dr. Anthony Goreczny and informed Plaintiff that he was suspended with pay pending the results. Plaintiff submitted to the examination and was cleared for duty by letter from the evaluating doctor on April 15, 2016. However, in Dr. Goreczny's opinion, Plaintiff had "some distress" and would benefit from treatment. Thus, he recommended, *inter alia*, that Plaintiff be permitted to return to work following his "initial psychotherapy treatment sessions." (ECF No. 28-1). Based on this recommendation, on April 19, 2016, the Mayor informed Plaintiff that he must undergo additional counseling and further evaluation before returning to work. The union became involved, and following the submission of a letter recommending the suspension-with-pay be lifted, Plaintiff resumed active status on or about April 27, 2016.

Nonetheless, the harassment continued. Plaintiff remains employed with the Department; however, he alleges that he was reassigned to work that interfered with his duties as a detective and that he has been blocked from accessing the Department's computers and from participating in charity events with the Department. Further, he alleges that Wittenburg has convinced his fellow officers not to speak to or engage with Plaintiff, which effectively "exclude[s] [him] from union business." (ECF No. 21 ¶ 19).

**Procedural History**

Plaintiff filed his original complaint on August 9, 2017 (ECF No. 1). On October 10, 2017, Defendants filed a motion to dismiss Plaintiffs' complaint (ECF No. 13), and a brief in support thereof. (ECF No. 17). In response, Plaintiff filed his first Amended Complaint (ECF No. 21). In light of this filing, the Court terminated Defendants' motion. On November 6, 2017, Defendants

filed a motion to dismiss the amended complaint (ECF No. 25), along with a brief in support (ECF No. 26). Plaintiff has filed a brief in opposition (ECF No. 28).

In his amended complaint, Plaintiff contends that the actions of the Borough, by and through Alexander and Wittenburg, violated the Rehabilitation Act, 29 U.S.C. §§ 791-794 (Amended Complaint Count I). Additionally, Plaintiff raises 42 U.S.C. § 1983 claims against all three Defendants arguing, respectively, that Alexander violated his rights under the Fourth and Fourteenth Amendments (Amended Complaint Count II), that Wittenburg violated his rights under the First and Fourteenth Amendments (Amended Complaint Count III), and that the conduct of Alexander, as a statutory final policy maker, imputes onto the Borough § 1983 liability (Amended Complaint Count III).

This Court has jurisdiction pursuant to 29 U.S.C. § 794a(1) and 28 U.S.C. § 1331. The parties have consented to proceed before the undersigned pursuant to 28 U.S.C. § 636(c) (ECF No. 9, 10).

**Standard of Review**

A defendant moving to dismiss under Fed. R. Civ. P. 12(b)(6) bears the burden of proving that the plaintiff has failed to state a claim for relief. See Fed. R. Civ. P. 12(b)(6); *see also, e.g.*, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). The United States Supreme Court opinions in Bell Atlantic Corporation v. Twombly*,* 550 U.S. 544 (2007) and, more recently, in Ashcroft v. Iqbal*,* 556 U.S. 662 (2009), have shifted pleading standards from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss. With the Supreme Court instruction in mind, the Court of Appeals for the Third Circuit has outlined a two-part analysis that courts should utilize when deciding a motion to dismiss for failure to state a claim. First, the factual and legal elements

4

of a claim should be separated. In other words, while courts must accept all of the complaint's well-pleaded facts as true, they may disregard any legal conclusions. Second, courts then decide whether the facts alleged in the complaint are sufficient to demonstrate that the plaintiff has a "plausible claim for relief." Iqbal, 129 S.Ct. at 1950. That is, a complaint must do more than allege the entitlement to relief; its facts must show such an entitlement. Fowler v. UPMC Shadyside, 578 F.3d 203, 210–211 (3d Cir.2009). Further, we are mindful that, "[t]o decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record...." Pension Benefit Guaranty Corp. v. White Consolidated Indus., 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted).

With this standard in mind, we turn to the allegations of the amended complaint.

**Discussion**

Defendants ask this Court to enter an order dismissing all counts contained in Plaintiff's amended complaint. Defendants offer the following arguments: (1) Plaintiff has failed to state a claim under the Rehabilitation Act; (2) Plaintiff has failed to establish that he was denied due process under the Fourteenth Amendment; (3) Plaintiff has failed to establish that the Defendants' actions violated his rights under the First or Fourth Amendments; (4) Plaintiff has failed to establish a Monell[2] theory of liability against the Borough; and (5) Plaintiff's claims against Alexander and Wittenburg in their individual capacity are insufficient to establish liability under the Fourteenth Amendment. (ECF No. 26, at pg. 5-19).

In response, Plaintiff argues that (1) Defendants' argument with respect to the Rehabilitation Act is without merit due to Defendants' use of the incorrect standard for "regarded as" cases and, under the applicable standard, Plaintiff has met his burden; (2) he has pled facts

---

[2] Monell v. New York City Department of Social Services, 436 U.S. 658 (1978).

5

sufficient to prove that the requirement that he undergo psychological testing violated his rights under the Act; (3) he has pled facts sufficient to prove that the Borough's employees violated his due process, First, and Fourth Amendment rights in their individual capacitites; and (4) that his claims satisfy the requirements of Monell such that municipal liability may be found. (ECF No. 28, at pg. 2-15 (unnumbered)). Thus, Plaintiff asks this Court to deny Defendants' motion, and requests leave to amend the complaint should this Court determine that it is deficient. (ECF No. 28, at pg. 8, 16).

Defendants first challenge Plaintiff's ability to state a claim under the Rehabilitation Act. The Rehabilitation Act prohibits discrimination against qualified individuals with disabilities. 29 U.S.C. § 791. Under the Rehabilitation Act, a "disability" may be: (1) "a physical or mental impairment that substantially limits one or more major life activities;" (2) "a record of such an impairment;" or (3) "being regarded as having such an impairment." 42 U.S.C. § 12102(1). "An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C.A. § 12102(3)(A). The parties do not dispute that Plaintiff is a qualified individual under the Act; rather, Defendants contend that Plaintiff is unable to make a *prima facie* case of discrimination. However, this Court is mindful that "[a] *prima facie* case is an evidentiary standard, not a pleading requirement, and hence is not a proper measure of whether a complaint fails to state a claim." Connelly v. Lane Const. Corp., 809 F.3d 780, 789 (3d Cir. 2016) (citations omitted). Further,

> [a] complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits. The Supreme Court's Twombly formulation of the pleading standard does not impose a probability requirement at the pleading stage, but instead simply calls for enough

6

facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.

McTernan v. City of York, PA, 564 F.3d 636, 646 (3d Cir. 2009) (citations omitted).

Accepting the well-pleaded allegations in the complaint as true, as this Court must, Plaintiffs establish the following. Plaintiff is a police officer with 25 years of experience and commendations for his service. (ECF No 21, ¶¶ 10-13). In December of 2015, Wittenburg, a fellow officer and the Department's union steward, submitted to the chief of police a "statement of charges" against Plaintiff. (Id. at ¶15). The statement was signed by five other officers and alleged, *inter alia*, that Plaintiff was in need of mental health treatment. (Id. at ¶¶ 15, 19). The chief of police forwarded the statement to Borough Council which hired an attorney to complete an investigation. (Id. at ¶¶16-17). The investigation yielded no wrongdoing on the part of Plaintiff. (Id. at ¶ 21). Plaintiff never received a copy of the statement, despite repeated requests. (Id.)

After the investigation had concluded, Wittenburg and his fellow officers continued to publicize that Plaintiff was "nuts" and a danger to the community. (Id. at ¶¶ 22-23). They refused to work with or speak to Plaintiff. (Id. at ¶ 26). Plaintiff reported this treatment to Alexander, who took no action. (Id. at ¶ 24). Alexander ordered Plaintiff not to discuss the matter. (Id. at ¶ 25). Due to this statement and Wittenburg's position as union steward, Plaintiff has no means to address the issue under the CBA and was excluded from union business. (Id. at ¶ 26).

Although the Borough's commissioned investigation determined that Wittenburg's statement of charges was baseless, in April of 2016, Plaintiff was suspended with pay by Alexander pending a fitness for duty examination. (Id. at ¶ 30). Alexander provided Plaintiff with a letter outlining four reasons for the suspension, "none of which constituted any failure to perform the duties of his office." (Id. at ¶ 31). Plaintiff had not received advance notice of the decision;

moreover, no specific corroborating information was provided for three of the incidents alleged in the letter, while the fourth "had simply not occurred." (Id. at ¶¶ 31-32).

Plaintiff was examined and was determined to be psychologically fit for duty; however, the examining doctor recommended that Plaintiff undergo psychotherapy sessions before returning to active status. (Id. at ¶¶ 36-43). Alexander informed Plaintiff that he was required to comply with the doctor's recommendations prior to being reinstated. (Id.) Plaintiff complained to "his union business representative" regarding this situation.[3] (Id. at ¶ 44). In response, the union sent a letter to Alexander outlining the damaging nature of administrative leave as it could create the false impression that Plaintiff is unfit for duty. (Id. at ¶ 45). After the union intervened, Plaintiff returned to active duty, although the harassment by other officers in the Department, including Wittenburg, has continued. (Id. at ¶ 47-50). Further, Plaintiff alleges that Alexander showed the results of his evaluation to at least one member of Borough Council and that members of Borough Council have advised Alexander to "get rid of" Plaintiff. (Id. at ¶ 27, 55). In addition, Plaintiff was reassigned to work that conflicted with his duties as a detective, was locked out of Department computers, and was prohibited from attending social events with the Department. (Id. at ¶ 51-54).

Plaintiffs' well-pleaded allegations establish a plausible claim as to Count I: that he has been subjected to actions prohibited under the Rehabilitation Act because of an actual or perceived mental impairment. With regard to Counts II, III, and IV, the Court is mindful that,

Section 1983 provides as follows.

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

---

[3] This person is not identified but it does not appear to be Wittenburg.

The Supreme Court has held that § 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979). Here, Plaintiff has established that Alexander, in his capacity as Mayor, demanded that Plaintiff undergo a psychological fitness for duty exam; tied the results of the examination to Plaintiff's continued employment; provided scant evidence as to the necessity of the exam; ordered the examination despite the fact that the independent investigation into the Wittenburg statement had resolved in favor of Plaintiff; failed to provide Plaintiff with advance notice of or a copy of the Wittenburg statement or of the allegations underlying the psychological examination; required additional treatment despite the evaluating doctor's averment that Plaintiff could return to active duty; and continued to treat Plaintiff differently from other officers, to ignore his complaints about continued harassment, and to hold Plaintiff out as having a mental impairment that affected his job performance to members of Borough Council. These facts, at this level, state plausible claims for violations of Plaintiff's Fourth Amendment right to be free from unlawful search and seizure as well as his Fourteenth Amendment right to due process.

Similarly, the facts pled with respect to Wittenburg, as union steward, in persuading other union members to adopt the statement of charges against Plaintiff, and continually and repeatedly expressing to union members, Borough Council, and the general public that Plaintiff suffered from a mental impairment raises a plausible claim for relief for violations of Plaintiff's First Amendment right to freedom of association and obstruction of his liberty interests under the Fourteenth Amendment.

Finally, it is well-settled that

a local government may not be sued under § 1983 for any injury inflicted solely by

its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts injury that the government as an entity is responsible under § 1983.

Monell v. Department of Social Servs. of City of N.Y., 436 U.S. 658, 694 (1978) (citations and quotation marks omitted).

In order to sustain a claim under Monell, a plaintiff must first establish "that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir.1990). "Determining who is an official possessing final authority to establish municipal policy is not a question of fact, but a question of state law." Boyden v. Twp. of Upper Darby, 5 F. Supp. 3d 731, 742 (E.D. Pa. 2014), citing City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988).

Here, the amended complaint identifies Alexander as a policy-maker. Defendants do not challenge this identification. However, Defendants claim that Plaintiff has failed to set forth facts sufficient to establish a custom or policy[4] of the Borough. "Custom … can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." Bielevicz, 915 F.2d at 850. Further, a plaintiff seeking to establish liability pursuant to Monell must establish causation by properly pleading that the municipality's policy or custom "was the source of [his or] her injury." Santiago, 629 F.3d at 135.

In his amended complaint, Plaintiff alleges that, since December of 2015 when the statement of charges was submitted to the chief of police, it has been the custom of the Borough,

---

[4] Here, Plaintiff has failed to allege existence of a formally-enacted policy; thus, the Court will confine its analysis to whether the complaint pleads sufficiently facts to establish a custom of discrimination.

through the actions of Alexander and the officers he supervises, to ostracize, discredit, and defame Plaintiff due to his perceived mental impairment. (ECF No. 21 at ¶¶ 56-67). Additionally, it has been the custom to discipline, suspend, and demote Plaintiff, while ignoring his complaints of ill-treatment and offending conduct by other officers. (Id.) The perceived goal of this conduct is to cause injury to Plaintiff, namely, loss of his employment and reputation. (Id.) Thus, Plaintiff contends he has established the existence of "a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." Praprotnik, 485 U.S. at 127 (citation and quotation marks omitted). The Court accepts as true Plaintiff's well-pleaded factual allegations and finds the same sufficient to establish both custom and causation, that is, the "plausible nexus or affirmative link between the municipality's custom and the specific deprivation of constitutional rights at issue." Bielevicz, 915 F.2d at 851 (quotation marks omitted). Therefore, Plaintiffs' § 1983 claims survive Defendants' motion to dismiss.

*Conclusion*

For the foregoing reasons, Defendants' motion to dismiss is denied in its entirety. An appropriate order follows.


Dated: January 30, 2018                    /s/ Robert C. Mitchell

                                                                                 ROBERT C. MITCHELL
                                                                                 United States Magistrate Judge

Cc: record counsel via CM-ECF

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRIAN ANDREKOVICH,<br>    Plaintiff,<br><br>v.<br><br>BOROUGH OF PUNXSUTAWNEY,<br>RICHARD ALEXANDER *in his<br>individual capacity*, and FRANK<br>WITTENBURG *in his individual capacity*<br>    Defendants. | Civil Action No. 17-1041<br><br>Magistrate Judge Robert C. Mitchell |

## **ORDER**

AND NOW, to-wit, this 30th day of January 2018, for the reasons stated in the Opinion filed contemporaneously herewith, it is hereby ORDERED that Defendants' Motion to Dismiss Amended Complaint (ECF No. 25) is DENIED.

                                                           /s/ *Robert C. Mitchell*
                                                         ROBERT C. MITCHELL
                                                         United States Magistrate Judge

Cc: record counsel via CM-ECF